EDGECOMBE COUNTY AND R. B. HYATT, SHERIFF, v. A. T. WALSTON,
TRUSTEE, ET ALS.

(Filed 19 September, 1917.)

1. **Taxation—Funds—Custodia Legis—Statutes—Constitutional Law.**

    The taxation of funds in *custodia legis* is regulated by the Legislature,
    subject to constitutional provisions.

2. **Taxation—Funds—Clerks of Courts.**

    The clerk of the court is both a "receiver" and "accounting officer" of
    funds paid into his hands in the course of litigation, within the meaning
    of the statute, and thereunder should properly list such funds for tax-
    ation on May first of each year, when no adjudication as to the rightful
    owners has been made.

3. **Same—Claimants—Title—Judgment.**

    Where the proceeds of the sale of the property of an insolvent corpora-
    tion have been paid into the office of the clerk of the Superior Court await-
    ing adjudication as to its distribution among first and second mortgagees,
    bondholders and others claiming a superior lien, the duty of the clerk to
    list the fund for taxation on May first, as the statute requires, is not
    affected by the fact that some of the bondholders have listed their bonds
    for taxation which others claim to be exempt, for they can acquire no title
    to or control over the funds or a part thereof until the matter has been
    determined.

CIVIL ACTION tried before *Whedbee, J.,* at April Term, 1917, of EDGE-
COMBE.

By consent, the court found the facts as set out in the answer to be
true, and that those not found in the answer, but set forth in the com-
plaint, are also true.

The purpose of the action is to determine whether certain moneys
listed for taxation by the clerk of the Superior Court, 1 May, 1915, are
liable to taxation. His Honor rendered judgment against plaintiffs,
dismissing the action. Plaintiffs appealed.

*Alsbrook & Phillips for plaintiff.*
*G. M. T. Fountain & Son for defendant.*

BROWN, J. From the pleadings we gather that these are the admitted
facts:

The property of the Tarboro Cotton Factory, a corporation, was sold
by decree of the Superior Court by the receivers under foreclosure of a
second mortgage for $60,000, subject to a first mortgage for $100,000.
The property subject to said first lien was sold for $29,000, the sale
confirmed, and the money paid to the receivers who made the sale. By
interlocutory decree, this money was paid to the clerk of Superior

Court (after deducting certain allowances) to await the subsequent determination of the court as to the rights of the various creditors, the fund being insufficient to pay them all in full. Under the decree of June Term, 1914, the receivers paid to the clerk $18,700.

No further decree having been made in the cause since June, 1914, the clerk of the Superior Court duly listed said fund for taxation on 1 May, 1915.

Subsequently, at June Term, 1915, a decree was entered in the cause directing the clerk to pay over to the codefendants Staton, Cobb, and Zoeller (who own all the second mortgage notes) all of said fund except $2,275 retained to await the disposition of certain contested claims supposed to have priority over the second mortgage.

It is contended that the money on deposit with the clerk was not taxable on 1 May, 1915 It is true that at common law, property in *custodia legis* was not subject to taxation (Cyc., 797), but the subject of taxation is one now regulated exclusively by statute, subject to constitutional provisions, and the law-making power has the right to tax property in the custody of the courts and judicial officers as well as any other property.

The statutes of this State require that taxes shall be listed as of 1 May, each year, and every person owning property is required to list all the real and personal property, money, credits, etc., in his possession or under his control on the first day of May, either as owner or holder thereof, or as parent, guardian, trustee, executor, executrix, administrator, administratrix, receiver, accounting officer, partner, agent, factor, or otherwise.

The clerk was both receiver and accounting officer as to this fund, and it was plainly his duty to list it for taxation as it was in his hands and no decree for distribution had been entered on 1 May. By use of the words "or otherwise," the statute is made broad enough to cover all funds in the hands of the clerk of the Superior Court or any other public official or fiduciary.

For a further defense, it is averred in the answer "that the money was due to the parties named in the exhibit hereto attached, marked 'A,' by bonds secured under the trust deed recorded in Book 146, at page 68, and was by those who are liable therefor duly listed as solvent credits. That a large number of the creditors secured in said mortgage were not liable for taxes on said funds, for that they were themselves indebted to others in a larger amount than others were indebted to them. That the said clerk was holding the fund under the order of court, awaiting the dicision of this court as to who was entitled to said fund."

It is manifest that the facts stated are too meager and indefinite to base any judgment upon. It is not stated what creditors listed their

second mortgage notes, or what valuation was placed upon them. It does not appear that the entire second mortgage notes were listed at valuations at all equaling the sum in the hands of the clerk, nor ·what amount of taxes have actually been paid on said notes. But if the facts were fully and sufficiently stated, they would constitute no defense to plaintiff's claim.

On 1 May, 1915, no decree had been made disposing of the fund, or any part of it. The rights of the claimants to it had not been adjudicated, and no one of them had acquired a title to any specific part of it. At that time there were other claimants seeking to subject part of this fund to their demands whose claims were supposed to have priority. These claims had not been passed upon by the court, and what dividend would be paid on the second mortgage notes was uncertain and unascertained. Until the June decree, defendants acquired no title to or control over the fund and had no right to list any part of it for taxation on 1 May. That was plainly the duty of the clerk.

Before the foreclosure of the mortgage the factory property was taxable separate and distinct from the notes. The corporation paid the taxes on the property, and the owners of the notes were chargeable with the taxes upon them. The same rule prevailed as to the proceeds of sale up to the final decree in June, 1915. The second mortgage notes, after the foreclosure, may have been worth but little, if anything. The owners were not required to list them at more than their actual cash value, deducting their indebtedness. If they were worthless in consequence of such foreclosure and the insolvency of the corporation, they were not required to list them at all. If they listed them at a substantial value when they were worthless, it was their own folly. The clerk had no knowledge of what defendants claim to have done, and even if he had he could not be governed by their actions. It was his duty to obey the statute, which he did.

Upon the facts agreed let judgment be entered for plaintiffs.

Reversed.